## JENKINS v. WHEELER.

[No. 2 of this name.]

December, 1867.

Where the *nominal* owner of a vessel executes a mortgage thereon to secure money loaned to the real owner, for the benefit of the vessel, the mortgage containing no covenant by the mortgagor to pay, he is not personally liable for the debt.

Oliver N. Jenkins (for whom, on his death pending the action, Catharine A. Jenkins, administratrix, was substituted as plaintiff) brought this action in the New York superior court, against David E. Wheeler.

The facts appear in the opinion.

*C. N. Black*, for plaintiff, appellant.

*J. W. Edmonds*, for defendant, respondent.

BY THE COURT.—DAVIES, Ch. J.—The complaint avers that Oliver N. Jenkins, the plaintiff's intestate, on February 8, 1853, loaned to the defendant the sum of two thousand dollars, and as a security therefor, the defendant executed to him a mortgage on five-eighths of the bark Peytona, then lying in the port of New York. That, at the time said loan was made, and as a condition for making the same, the defendant agreed to obtain an insurance on said five-eighths of said bark, in the sum of two thousand five hundred dollars, for the benefit of the plaintiff, and payable to or to be assigned to him. That afterward the vessel sailed from New York, and on August 16, 1863, was damaged and found unseaworthy, and was abandoned

to the underwriters; and that, as plaintiff believes, large sums of money had been collected by the defendant for insurance effected by said defendant upon said bark. That plaintiff had demanded said policies of insurance from said defendant, which he wholly neglects to deliver to him. Plaintiff avers that he would not have loaned the said sum of two thousand dollars except upon the promise of said defendant to effect said insurance. Plaintiff says, that in consequence of the defendant failing, neglecting and refusing to deliver said policies of insurance to the plaintiff, or to account to him as aforesaid, he had sustained damage to the amount of two thousand dollars, and interest from February 8, 1853. Wherefore said plaintiff demanded judgment for said sum and interest

Defendant, by his answer, denied that said Jenkins loaned him two thousand dollars on said February 8, 1853. The defendant admits that he executed a mortgage to the said plaintiff, but denies that the money therein mentioned was loaned to him, but avers that the mortgage was executed to secure a loan of the sum of two thousand dollars, made by said Jenkins to Anthony Pelletier, and that said mortgage was executed as collateral security for the same. That said bark, her tackle, &c., was in possession of the plaintiff, Jenkins, at the time of said mortgage, and that defendant was never the owner thereof. That said plaintiff well knew, at the time of said loan, that the defendant was not the owner of said bark, and had no interest whatever in it, and that said mortgage was issued by the defendant, because said bark stood in his name at the customhouse and for no other reason whatever. Defendant denied that he ever agreed to obtain said insurance for said Jenkins. He also denied that the underwriters had ever paid him any sum of money whatever on insurance policies effected by him on said bark. Defendant also denied all the other allegations of the complaint.

The plaintiff, Jenkins, having died, the action was continued in the name of the present plaintiff, his representative.

Upon the trial, the plaintiff produced the mortgage, dated February 5, 1856, executed by the defendant Wheeler, which was given upon five-eighths of said bark, to secure the sum of two thousand dollars, but which contained no covenant or

Jenkins *v.* Wheeler.

agreement to pay the same, by said defendant, Wheeler, but the defeasance clause was in these words: "Provided, nevertheless, that if Anthony Pelletier, his executors, &c., or any of them, do and shall well and truly pay unto the said Oliver N. Jenkins, his executors, &c., the sum of two thousand dollars and interest at the rate of seven per cent. per annum, on or before one year from the date thereof, then these presents and everything therein contained should cease and be void, otherwise to remain in full force and virtue."

It also appeared, that, on said February 5, 1853, the said Pelletier made and executed, and delivered to said Jenkins, his bond in the penal sum of four thousand dollars, conditioned to pay the sum of two thousand dollars on or before one year from the date thereof, with interest thereon at the rate of seven per cent. per annum, and which contained this clause: "which said sum is secured to be paid by a certain mortgage of even date herewith, on the bark Peytona (now lying at the port of New York), and if said mortgage is paid according to the conditions therein expressed," then that obligation was to be void.

The mortgage and this bond demonstrate conclusively, that this sum of two thousand dollars was, in fact, loaned by Jenkins to Pelletier. In addition, Pelletier, a witness on the part of the plaintiff, testified that Jenkins was to loan the two thousand dollars to him for his (witness') benefit, and that he was to secure him by his bond and a mortgage on the ship. He also testified, that Jenkins had agreed to loan him two thousand dollars, and that he took Jenkins to the defendant's office to prepare the paper which he was to give to Jenkins to secure him for the loan.

There was no conflicting testimony on this point, and it is very clear, therefore, that Jenkins did not loan the two thousand dollars to the defendant, but that it was loaned by him to Pelletier.

Equally satisfactory is the proof of the alleged agreement by Wheeler, to procure for Jenkins a policy of insurance on the vessel to the amount of two thousand five hundred dollars. A witness testified, that Jenkins and Wheeler were in his office about the time Jenkins was to sail, and he overheard a conversation between Jenkins and a brother of the witness, Wheeler

being present; and at the same time, the witness' brother delivered Jenkins some money. Jenkins turned toward the counter, and said there were certain papers that were not then ready, but that Mr. Wheeler would get them ready, and inclose them in an envelope, and send them to the office for us to transmit to his wife, Mrs. Jenkins; he mentioned what papers they were; he mentioned that there was to be an agreement, a bond and mortgage, and a policy of insurance; he did not state for how much. This witness said he did not see Jenkins pass any money to Wheeler.

The witness was asked, " Was there anything said as to what the policy of insurance was to be upon?" Answer: " I·can't say, any more than it was to secure this loan; I can't say what it was to be upon." He was then asked, " Did Wheeler say anything that you recollected particularly?" Answer: "·He made no objection." It thus affirmatively appears that the defendant made no agreement to procure a policy of insurance, or promised to procure one. The witness Pelletier testified, that " the ship was mine, and I, had to secure Jenkins for the money that went to my benefit, . . . therefore, I was in duty bound to insure it, as it was far more valuable to the vessel; I promised Captain Jenkins I would see him insured before he would see Mr. Wheeler." This witness also testified, that he effected an insurance for the full value of the vessel. He further testified, that the two thousand dollars received from Jenkins, went to his benefit in the account with Overman & Gruner.

This evidence furnishes no basis for the allegation that the defendant engaged, or promised to effect an insurance on the vessel, as security for the loan of two thousand dollars. That loan was made to Pelletier, the money received by him, negotiated by him with Jenkins, and the engagement and promise to procure the insurance for the benefit of Jenkins, were made by Pelletier. There is no evidence that any such engagement or promise was ever made by the defendant. Neither was there any liability created, as against the defendant, by reason of this loan to Pelletier, assuming that it was made for the benefit of the vessel, from the circumstance that the title stood in the defendant's name at the custom-house. The defendant was

not in possession of the vessel, and did not control it. The question of his liability, in this aspect, was settled by this court in the case of Macy v. Wheeler, 30 *N. Y.* 231.

The plaintiff was properly nonsuited, and the judgment thereon should be affirmed, with costs.

All the judges concurred.

Judgment affirmed, with costs.